**Willie Mae BARKER, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Jan. 29, 1965.

Louis P. McHenry, Hopkinsville, Robert P. Hastings, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, James P. Hanratty, Commonwealth's Atty., Hopkinsville, for appellee.

DAVIS, Commissioner.

Willie Mae Barker was convicted of the murder of Orlena Denton. He appeals the judgment of the Christian Circuit Court imposing the life sentence according to the jury's verdict.

. Two grounds of error are argued: (1) Appellant was entitled to directed verdict due to the lack of adequate corroboration of the evidence of an accomplice, and (2) appellant was denied the constitutionally guaranteed "speedy trial."

. Twice this court considered appeals by the alleged accomplice of the present appellant. Manning v. Com., Ky., 346 S.W.2d 755; Manning v. Commonwealth, Ky., 328 S.W.2d 421. In the cited cases Manning was on trial for the slaying of H. M. Denton, the husband of the victim in the present case.

Sometime during the early morning hours of July 20, 1958, H. M. Denton and Orlena Denton were brutally murdered. During the evening of the killings neighbors of the Dentons heard disturbing sounds emanating from the Denton home. The Hopkinsville police were called to the scene by one of the neighbors. However, when the officer inquired whether any help was desired, he

was informed by a voice from within that nothing was amiss. The officer assumed the answer came from H. M. Denton, although it is doubtful that it did.

The officer departed. The neighbors continued to be apprehensive, and shortly heard Mr. Denton beg for mercy. These witnesses heard sounds of blows and cries of anguish from the victim, H. M. Denton; there was no showing that any outcry from Orlena Denton was heard.

Thereupon the police were called again. On the second visit, the police went into the Denton home, where the body of Orlena Denton was discovered. She had been beaten beyond recognition. H. M. Denton was still alive, but horribly beaten and disfigured. He died shortly, but not before he told the officers "they" had beaten his wife to death. He expressed his belief of his own impending death. He did not identify the assailants.

 Silas Manning ultimately was convicted of the murder of H. M. Denton. Manning testified that appellant was involved with him in the crime. The question is whether Manning's testimony was corroborated as required by RCr 9.62. The test is met if the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Corroboration is not sufficient if the other evidence merely shows that the offense was committed and the circumstances thereof. We have concluded that the corroboration required was presented.

Appellant's automobile was found parked approximately 100 to 150 yards from the Denton residence, just after the discovery of the murder. In the car was found an insurance policy of H. M. Denton.

Forthwith the sheriff ascertained that appellant was the owner of the automobile just mentioned. The sheriff then went to find appellant at appellant's sister's home. The evidence of the sheriff as to what happened when he first encountered appellant is significant, and is:

"* * * and Willie Mae said, 'Mr. McKinney, what do you want with me?' And I said, 'Willie Mae, you should know what I want with you.' He said, 'If anything has happened to those old people, I know who done it.' He said, 'Silas Manning stole my car last night and he's the guy that done it.' So I said, 'All right, come on and let's go and we'll see if we can find Silas Manning.' And he got in the car with me, never turned a word, he got in the back seat and we started hunting Silas Manning."

Appellant testified in his own behalf, but made no showing that he had been informed of the finding of his car near the scene. He sought to explain that the sheriff had first said, "You and Silas Manning killed those old people." It may be that the jury regarded his explanation as more incriminating than the evidence he sought to explain—because if the sheriff's account is to be believed, Silas Manning's connection with the murders was not then suspected or thought of by the sheriff or anyone else.

The officers testified that so much blood was in the Denton home that anyone who had entered the area would have necessarily been bloodstained. Appellant points out that no one produced any bloodstained clothing attributable to him. However, he claimed an alibi—saying that he had spent the night, somewhat intoxicated, at Silas Manning's home. Yet, when the sheriff located him early on the morning of the crime, appellant was at his own place of residence; no search was made for appellant's clothing. The sheriff said that appellant told him that he had come to his sister's house from Manning's "to change some clothes."

It is our view that the circumstances just related afford that degree of corroboration required by RCr 9.62. Williams v. Com., 257 Ky. 175, 77 S.W.2d 609, and cases there discussed.

As noted, the crime occurred July 20, 1958. Appellant was indicted September 15, 1958. The actual trial occurred October 9, 1963. Sixteen continuances were granted to the prosecution. Appellant was not released from jail on bail until June 3, 1959, when the bail bond was fixed at $5,-000.

However, there is no showing that appellant made any objection to the delay until February 12, 1963, when his counsel filed motion for dismissal for lack of prosecution and because of the denial of a speedy trial.

The trial court denied that motion to dismiss, when the prosecution responded showing that Silas Manning's trial had not terminated until December, 1962, and that the instant case had been scheduled for trial in February, 1963, but trial then could not be had because of the serious illness of the former sheriff—a material and vital witness. Silas Manning, of course, was not available as a witness so long as he remained unconvicted, as his evidence would have incriminated himself. On June 17, 1963, the trial court ordered that the prosecution present the case for trial at the ensuing term of court on pain of dismissal for lack of prosecution. The case was tried pursuant to that order.

■ Kentucky Constitution, § 11, guarantees the right to a "speedy public trial by an impartial jury of the vicinage." We have few cases dealing with the topic; it is likely that this is true because most criminal cases are tried promptly—and often the defendant has no desire to expedite the trial. However, it appears settled that the right to speedy trial is one that may be waived. People of the State of New York v. Prosser, 309 N.Y. 353, 130 N.E.2d 891, 57 A.L.R.2d 295. See annotation in 57 A.L.R. 2d 302, et seq. The courts have not uniformly determined what amounts to waiver. We regard as sound the rule which regards the failure of the accused to demand trial as his waiver of his right to a speedy trial. 57

A.L.R.2d, p. 326, § 10. Therefore, nothing that happened prior to appellant's demand for trial on February 12, 1963, shall be considered.

■ The delay from February to October, 1963, was not, in our judgment, such delay as deprived appellant of a speedy trial. The reason for the delay was the illness of an important witness. There is no showing that the delay was sought for any sinister purpose. More importantly, there is no showing that appellant thereby lost any portion of his defense. In short, there is no indication that any prejudice to appellant's complete right to a fair trial was caused by the delay in question. Under these circumstances, we conclude that the claim of violation of Kentucky's Constitution is without merit.

It is observed that appellant did not avail himself of the remedy of mandamus as was done in Hoskins v. Wright, Ky., 367 S.W.2d 838.

■ There was no infringement of any right of appellant under the United State Constitution. The speedy trial provision of the Sixth Amendment, U. S. Constitution, does not apply in state prosecutions. Odell v. Burke, 281 F.2d 782 (7CA), cert. den. 364 U.S. 875, 81 S.Ct. 119, 5 L.Ed. 2d 96. However, the due process clause of the Fourteenth Amendment, U. S. Constitution, is applicable.

In United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2dCA), a prisoner sought release by habeas corpus based on his assertion that undue delay of his trial in New York State Court had deprived him of due process. In rejecting the claim the Circuit Court of Appeals, 2nd Circuit, wrote: "To establish a violation of the due process clause appellant must prove that the delay precluded a fair determination of the charges against him."

The court pointed to four factors relevant to consideration of whether denial of a

speedy trial assumes due process proportions. Those four factors are: the length of the delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant. In Fay the delay was three years and seven months, and this was characterized as "unusually long." However, since the prosecution's principal witness was in India, it was deemed that the reason for delay was valid. There, as here, the prisoner failed to demonstrate that any prejudice resulted from the delay. Under these circumstances, we conclude that the assertion of error is without merit.

The judgment is affirmed.