**Clement J. SCHWEINEFUSS et al.,
Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 4, 1965.

As Modified on Denial of Rehearing
Nov. 26, 1965.

Jack Howell, Covington, Edward F. Prichard, Jr., Frankfort, for appellant Schweinefuss.

Howell W. Vincent, Stephen McMurtry, Joseph C. Healy, Covington, for appellants Worthingtons.

Robert Matthews, Atty. Gen., Martin Glazer, Charles W. Runyan, Asst. Attys. Gen., Frankfort, for appellees.

DAVIS, Commissioner.

Clement J. Schweinefuss, Robert Worthington, and Janie Worthington were jointly indicted, jointly tried, and all convicted of the offense of "pandering," denounced by KRS 436.040, and the offense of "aiding and abetting prostitution", contrary to the provisions of KRS 436.075(2). The charge under KRS 436.040 is a felony; the latter charge of "aiding and abetting prostitution" is a misdemeanor. In an effort to minimize confusion, we shall refer to the appellants as "defendant Schweinefuss," "defendant Robert," and "defendant Janie."

The jury's verdict, followed by judgment of the court, declared each of the defendants guilty as to each charge, and fixed their respective punishments as follows:

Defendant Robert: Imprisonment for three years for the felony conviction; fine of $200 plus imprisonment for one year as to the misdemeanor.

Defendant Janie: Imprisonment for three years for the felony conviction; fine of $200 plus imprisonment for one year as to the misdemeanor.

Defendant Schweinefuss: Imprisonment for one year for the felony conviction; fine of $200 plus imprisonment for one year as to the misdemeanor.

The appellants present the following grounds upon which they deem themselves entitled to reversal: (1) It was error to permit the joinder of the felony and misdemeanor charges; (2) the court failed to admonish tentatively accepted jurors upon recess of court; (3) the court erred in refusing a continuance because of inflammatory newspaper articles; (4) damaging evidence was admitted which had been obtained by illegal search and seizure; (5) appellants Robert and Janie Worthington should have had directed verdicts of acquittal as to the misdemeanor charges; (6) evidence relating to conviction of a felony by appellant Robert Worthington should have been excluded; (7) the instructions were confusing, misleading and erroneous; (8) appellant Schweinefuss was prejudiced by court's refusal to grant him a continuance; (9) the court improperly refused an accomplice instruction.

The "star" witness for the prosecution was Dorothy Evans, who admitted practicing prostitution during the period pertinent to this case. According to Dorothy Evans, she was brought to a residence owned by defendants Robert and Janie Worthington at 128 East Eleventh Street, Covington, on September 23, 1963. The residence building was a house of prostitution, and defendant Janie served in a dual capacity in it—sometimes she acted as its "madam," and on rush occasions she worked as a prostitute. Dorothy Evans related that she was taken to the brothel by her "daddy" (a term she used to identify her pimp). This individual left Dorothy

in his automobile outside the house while he negotiated with defendants Robert and Janie. Upon completion of those preliminary details, the "daddy" brought Dorothy into the house and presented her to defendant Janie; at that initial encounter Dorothy saw neither defendant Robert nor defendant Schweinefuss.

Defendant Janie made some inquiry whether Dorothy had "worked" (as a prostitute) before, to which Dorothy made negative response. Shortly thereafter, defendant Robert put in his appearance and the tenor of the conversation continued along that line, after which Dorothy was instructed by defendants Robert and Janie "to get dressed for work."

Before she had opportunity to do so a "customer" of the bagnio arrived, whereupon Dorothy was directed by defendants Robert and Janie to take her place in the line with other harlots for inspection and selection. Dorothy was chosen.

The customer's requirements encompassed an area of debauchery which was unfamiliar to Dorothy, so she obtained instructions and demonstrations from defendant Janie prior to entering upon her professional duties. Dorothy was informed, by defendants Janie and Robert, as to the "going rates" for the various types of "parties" available to patrons of the house. It was further explained to her that she was to make memoranda incident to her acts of prostitution, and that she should transcribe thereon the amount of money collected from each customer, the time at which she started and finished each transaction, along with her professional identification as "Pam." These chits, together with the money collected, were placed by Dorothy in a bag provided for the purpose; the bag, along with similar receptacles available for the other operatives of the establishment, were neatly hung inside a closet door.

It was also explained that Dorothy's fiscal arrangements were such that at the close of each day's activities (which activities began at 10:00 a. m. and concluded at 4:00 a. m., on each week day—but never on Sunday) the gross proceeds emanating from her dealings with the customers should be divided, on the basis of 50% to the "house" and 50% to Dorothy. The "house," as Dorothy understood it, was comprised of defendants Robert and Janie. From Dorothy's share of the gross earnings the "house" extracted $2.00 per day as rental. In certain instances, when the customers were fetched to the house by taxi drivers, the share of Dorothy was subjected to a "bite" of 40% as recompense to the enterprising cabbie.

Dorothy testified that at the close of her first day's work as a prostitute the money in her bag was divided with her by defendant Robert; that on other occasions this division was accomplished by defendant Janie, and on still others by defendant Schweinefuss. She did not say that defendant Schweinefuss was an actual beneficiary of the money, or whether he merely supervised its division according to the foregoing schedule.

Dorothy said that she was under physical restraint which prevented her leaving the house, except at times when she was permitted, under supervision of her "daddy" or defendant Robert, to visit a beauty shop, and on Sundays, when she visited her small son. Dorothy was not able, with particularity, to specify on just what dates the money division was supervised by the respective defendants. She was able to finally leave the house on October 26, 1963, which was on Saturday. On the following Tuesday, October 29, she called upon the Commonwealth's Attorney and related substantially the sordid account just outlined.

Other witnesses for the prosecution included four "customers"; none of them identified defendant Schweinefuss or defendant Janie in any way; one of these four witnesses said that he saw defendant Robert there on the occasion of his visit to the house.

Four cab drivers testified for the Commonwealth. Two of these asserted that they merely took their fares to the house and did not participate in the 40% "cut." One of these two did not identify any of the defendants as having been present; the other said that defendant Robert was there on one occasion, but that he did not see the other two defendants.

The other two cab drivers admitted that they were recipients of 40% of the prostitute's share paid by the customers whom they had brought to the brothel. One of these said that he had observed defendant Schweinefuss in the house "once or twice," and that he had observed defendant Robert "once or twice" also, but that he had not seen defendant Janie. This witness stated also that defendant Schweinefuss had told the witness that "the place would be closed."

The second cab driver who admitted sharing the earnings of the prostitutes recounted that defendant Schweinefuss had handed the witness a card, containing the address of the house, at which time he informed the witness that the witness would receive the 40% share of whatever a prostitute in the house earned from a fare brought there by the witness. This witness said that on four or five occasions he did take passengers to the house, and did receive 40% of the share paid the harlot, although none of the defendants participated in paying him; he obtained the money directly from the woman. This witness said that he saw defendant Schweinefuss in front of the house on one such occasion, but that he had no part in the division of money.

The tax commissioner proved that the property in question is owned by the defendants Robert and Janie; he did not testify to any fact linking defendant Schweinefuss with the premises.

The Covington Chief of Police presented evidence of articles obtained by him as the result of a search conducted on October 29, 1963, pursuant to a search warrant issued on the affidavit of Dorothy Evans.

The articles included contraceptives, lubricating jelly and other items which Dorothy mentioned as having been used in conducting the house of prostitution.

We think there is no merit in the contention of appellants that it was error to permit the trial of the felony and misdemeanor charges together. RCr 6.18 when considered with RCr 9.12 authorizes this procedure. Appellants assert that they have been placed in double jeopardy because they conceive that the offense of aiding and abetting prostitution is a degree of and included in the offense of pandering. In support of this argument appellants cite Easly v. Commonwealth, Ky., 320 S.W.2d 778; Scarf v. Commonwealth, 195 Ky. 830, 243 S.W. 1034; Hunt v. Commonwealth, Ky., 338 S.W.2d 912, and Arnett v. Commonwealth, 270 Ky. 335, 109 S.W.2d 797. We recognize the rule as announced and followed in those decisions, namely, that two offenses growing out of a single criminal transaction may be separately prosecuted provided that the elements of the offenses are not the same, one of the offenses is not a degree of the other, or if the single act violates two separate statutes, or a statute and the common law. The related rule provides that a second prosecution is barred if the facts necessary to convict on the second charge would necessarily have convicted on the first charge. We have no such case here. See Adams v. Commonwealth, 313 Ky. 298, 231 S.W.2d 55, in which this court held that pandering and operating a disorderly house are separate offenses. The rationale of that case rules this one on the point under discussion.

Neither do we find merit in the contention that reversible error occurred when the trial court failed to admonish six tentatively qualified jurors as prescribed by RCr 9.70 at the end of the second day of trial. The admonition was given to the members of the tentative panel at least once before the evening adjournment of court on the second day of the trial. Throughout the course of the trial the judge

carefully admonished the jury at each recess, but did inadvertently omit to do so incident to the recess at the conclusion of the second day. While we regard it as error to fail to give the admonition, we are not persuaded that the error has been shown to have been prejudicial in this case. Appellants do not suggest nor offer any evidence that any person did improperly attempt to influence the tentatively selected jurors. In view of the fact that the court had already admonished the members of the panel earlier in the trial, and in light of the repeated admonitions given in the course of the trial, we will not assume, without any showing of it, that the jury did in fact conduct itself contrary to the mandate of the admonition. RCr 9.24 directs that no error shall avail unless it is one affecting substantial rights. In this instance there is no showing that a substantial right of any appellant was adversely affected. Cf. Bowman v. Commonwealth, 146 Ky. 486, 143 S.W. 47; Anderson v. Commonwealth, 291 Ky. 727, 166 S.W.2d 30.

■ At the outset of the trial the appellants moved the court to grant a continuance because of alleged inflammatory news coverage relating to the trial. It was contended that the news media (newspapers, television and radio) had so stirred up public resentment as to preclude the possibility of a fair trial in the community. Reliance is had on Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. We are in accord with the precepts followed in Irvin v. Dowd, supra, and cases of like import which have followed it. However, an examination of the news articles in the record (no specific transcript or claim as to the nature of the television and radio coverage is in the record) convinces us that the trial court correctly denied the motion. There is simply nothing in the articles which may fairly be construed as sufficient to establish prejudice against the appellants. There was no semblance of "trial by newspaper."

Before trial the appellants moved for suppression of evidence respecting personal property seized by officers from the house of prostitution. These items had been obtained pursuant to a search warrant issued upon the affidavit of Dorothy Evans. The grounds of attack upon this evidence are twofold; first that the affidavit was insufficient to authorize the search warrant, and second that the items seized were not properly subject to a search warrant in any event.

■ The affidavit recited that Dorothy Evans made the allegations in it "based on her own observation, personal knowledge and belief"; in another portion, the affidavit declares " * * * and that this affiant, from her own personal knowledge, knows that the activities of prostitution hereinabove set out have been carried on and engaged in in said premises for a period of time commencing with the 23rd day of September, 1963." The exact location of the premises was contained in the affidavit, and it was made on October 29, 1963. The affidavit further charged that on that same date, October 29, 1963, the premises were being used for purposes of prostitution and clearly reflected that the affiant was deposing that the illegal activities had been carried on with regularity from September 23, 1963, to and including the date of the affidavit. We deem it sufficient. We think nothing in Smallwood v. Commonwealth, Ky., 349 S.W.2d 830, or Henson v. Commonwealth, Ky., 347 S.W.2d 546, impels a different conclusion. The fact that the affidavit under consideration was specific as to date and place differentiates it from the affidavits condemned in the cited cases.

■ Whether the articles seized were proper subjects of a search warrant presents an interesting problem. The affidavit for search warrant declared that in a certain closet " * * * are contained the following items used to further the acts of prostitution, to wit: washing pans and utensils, mouth wash, vaseline, towels, cards used by the prostitutes, money bags, and

prophylactic contraceptive devices." Appellants insist that these articles were merely evidential, and not properly subject to search and seizure. Reliance is had upon United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, and Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. The latter decision specifically recognized that property held for committing crime is a valid object of a properly issued search warrant, because the public has a valid interest in prevention and detection of crime. It is our view that the affidavit's charge that these items were "used to further the acts of prostitution" affords ample basis for search for and seizure of them. Cf. Boles v. Commonwealth, 304 Ky. 216, 200 S.W.2d 467.

We find abundant evidence warranting submitting to the jury the issue whether defendants Robert and Janie were guilty of "aiding and abetting prostitution." Dorothy Evans gave specific evidence to that effect, as did cab drivers and patrons of the house of ill fame. It is our view that Dorothy Evans was not an accomplice. In Eisner v. Commonwealth, Ky., 375 S.W.2d 825, we reiterated that "An accomplice has been defined as one who is subject to prosecution for the identical offense of which the accused is being tried." It is clear that Dorothy Evans could not be guilty of accepting or appropriating money without lawful consideration from her own earnings as a prostitute; nobody suggested that she shared in any other prostitute's take. Neither was she in any wise guilty of aiding and abetting prostitution in setting up a house of ill fame. She was guilty of prostitution, but not of the two offenses for which the appellants were convicted.

What we have just said disposes of the ninth charge of error, relating to failure to give an accomplice instruction. RCr 9.62 directs that a conviction may not be had on uncorroborated testimony of an accomplice. It is not error to refuse an accomplice instruction if there is adequate evidence to corroborate the testimony of the accomplice. Combs v. Commonwealth, Ky., 341 S.W.2d 774. Conceding that the taxi drivers who admitted sharing the earnings of the prostitutes were accomplices on the felony charge, there was independent competent substantial testimony of guilt apart from the evidence of the drivers.

During her testimony Dorothy Evans had recounted that she was a virtual captive at the house of prostitution. The following questions and answers appear in her evidence:

"Q351   Did you make any attempt to leave prior to your leaving?

"A.   Yes, sir, but I was threatened.

"Q352   By whom?

"A.   By Bob Worthington.

"Q353   What did he say to you?

"A.   He told me that if I was to ever squeal or tell that I'd have my baby taken away from me and that he'd shoot anyone that took him away from his kids again because he'd already spent five years in the penitentiary."

Appellants moved for a mistrial as soon as the last answer was heard. The court overruled the motion and declined to make any admonition to the jury as to this testimony relating to defendant Robert's having spent time in a penitentiary. It is recognized by the Commonwealth that the general rule forbids evidence of other crimes, but it is contended that the testimony under consideration falls within one of the exceptions to that rule. We agree. The claim of Dorothy Evans that she was under restraint was a vital part of her evidence, and the jury may well have had doubt that she was unable to effect an escape. Her explanation of her fear of defendant Robert was an integral part of the very crime for which he was being tried. Under such conditions the evidence was

pertinent and proper. See Shepperd v. Commonwealth, Ky., 322 S.W.2d 115; Browning v. Commonwealth, Ky., 351 S.W. 2d 499; McGill v. Commonwealth, Ky., 365 S.W.2d 470. We think this case is distinguishable factually from Manning v. Commonwealth, Ky., 328 S.W.2d 421.

■ We hold that the appellants were not prejudiced by the manner in which the court instructed the jury. In substance the court submitted the felony charges and the misdemeanor charges in two separate instructions, authorizing conviction as to each if the jury believed beyond a reasonable doubt that the respective appellants had committed the offenses charged on any one of the thirty days embraced in the indictments. The limit of punishment was fixed within the range permitted for conviction of *one* offense. This was more favorable to the appellants than was warranted. The court could have submitted thirty separate opportunities to convict as to the felony charges and thirty more as to the misdemeanors. It is possible that the appellants could have been convicted on sixty separate charges of felony and misdemeanor; when the court limited the possible punishment to that applicable to just one conviction we think the appellants may not be heard to complain. If this was erroneous, it was harmless error. RCr 9.24.

Appellant Schweinefuss asserts that it was prejudicial error for the trial court to refuse his motion for continuance because his counsel had not had opportunity to properly prepare his defense. It appears that the case was called for trial on Friday, December 6, 1963, at which time Honorable Howell W. Vincent appeared as attorney for defendant Schweinefuss; the other defendants had separate counsel. Various preliminary motions were made and disposed of on that first day, and the case was assigned for trial on Tuesday, December 17, 1963. When the trial was started on December 17 defendant Schweinefuss was still represented by attorney Vincent, who made a motion for continuance based on claimed prejudicial news items. Mr. Vincent stated to the court, in part: "And, I might tell the Court, anticipating the Court's ruling on that motion, the defendant Schweinefuss, will be ready for trial."

The court did overrule the motion for continuance (as evidently anticipated by counsel), whereupon the parties proceeded to the selection of a jury. The regular jury panel was exhausted after six members of it had tentatively qualified for the jury. The trial was recessed until Wednesday, December 18, 1963, at which time further efforts to form a jury from a specially drawn panel were made. When the special panel was exhausted the trial was again recessed until December 19; on the latter date the completion of the jury was accomplished, and the trial order recites that the "respective parties, by counsel, accepted the jury as constituted * * *." However, the alternate (thirteenth) juror had not been qualified, so the trial was again recessed to December 20 for purpose of thus completing the jury. When proceedings were resumed on December 20 it was made known that defendant Schweinefuss had suffered an illness and that he was then confined to the hospital. After some inquiry about this, the trial was recessed until January 7, 1964.

When trial was resumed on January 7, 1964, defendant Schweinefuss appeared with attorney Jack Howell. The record discloses that defendant Schweinefuss had written attorney Vincent on January 6, 1964, advising the lawyer that his services would no longer be required. On that same date Mr. Vincent moved that permission be granted for his name to be withdrawn as record counsel for Schweinefuss. It is significant that Mr. Vincent did participate fully in the trial.

■ Under the circumstances, we are not persuaded that error was committed in refusing Schweinefuss's motion for continuance. We think it is apparent that a defendant may not discharge his lawyer in the midst of a trial and complain that he is

without proper representation, unless there is a substantial and valid showing that the action was in good faith and of necessity. Here there is no such showing. An examination of the proceedings fails to reflect any manner in which the defense of Schweinefuss was neglected, nor is there any suggestion that more time would have served any useful purpose in the preparation of the defense.

The judgments are affirmed as to each of the appellants.