William Banton MOORE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 17, 1972.

Rehearing Denied Feb. 16, 1973.

Louisa Moore. The facts of the case are as follows:

Appellant, an architect, resided with his wife and two children at 3 Woodhill Road in Prospect, Kentucky. On December 4, 1970, Louisa had been visiting in New York City. Sometime in the late afternoon or early evening she flew home from New York and disembarked at Standiford Field. Appellant met her there. They went to a restaurant in Louisville where they had dinner, accompanied by two or three drinks.[1] After dinner they went to their home. According to appellant they arrived there between eight and nine o'clock. They went straight upstairs to their bedroom where Mrs. Moore turned on the television and they talked for a short period of time. Mrs. Moore mentioned that she wanted a divorce. According to appellant's testimony he advised her it was impossible, that they had too many responsibilities. He further testified that at this point he felt the conversation might become argumentative so he suggested that he go sleep in another room and left. He testified that he went downstairs and turned on a television there, sat down and watched it for a minute or two until there was an intermission, went outside and picked up the suitcases and brought them to the bedroom; that it was probably around ten o'clock when he took the suitcases upstairs, and that he did not see his wife when he entered the bedroom. He assumed she was in the bathroom.

Following this he went back downstairs to the den where he read the newspapers and watched television until about midnight. When he went back to the bedroom, his wife was not there. The suitcases were unopened. He then looked into the bathroom and found her lying on the floor. He testified that she was lying pretty much on her back with her face turned slightly away from the door. He felt for her pulse, then took a hand mirror from a vanity table to see if she was breath-

Frank E. Haddad, Jr., Louisville, for appellant.

John B. Breckinridge, Atty. Gen., G. Edward James, Asst. Atty. Gen., Frankfort, for appellees.

OSBORNE, Justice.

Appellant was convicted of voluntary manslaughter and sentenced to 21 years' imprisonment for the slaying of his wife,

---

1. Appellant testified his wife had been drinking when she arrived.

ing. No moisture was formed on the mirror, whereupon he proceeded to give her artificial respiration. Following this he attempted mouth-to-mouth resuscitation. After he determined that he could not revive her he called Dr. Burford Davis. Dr. Davis arrived shortly thereafter and advised him that she was dead. Upon receiving this information he called the police. Appellant testified that he was not sure whether he called the police or Dr. Davis made the call. Upon their arrival, appellant advised the police that no other person could have entered the house and if his wife were killed, he would have to be the one who did it, but that in his opinion she died as the result of a fall in the bathroom.

The Commonwealth introduced into evidence testimony of police officers who arrived upon the scene along with personnel from the coroner's office describing the condition in the bathroom at the time they arrived. Photographs of the interior of the bathroom were introduced into evidence. The deceased was shown on the floor of the bathroom in a virtual sea of blood. Blood, hair and tissue were scattered over the entire interior surface of the bathroom on the floor, walls and ceiling. The entire scalp on the back half of the deceased's head was torn loose and hanging open and her skull was fractured. In addition, she had small bruises and abrasions on her arms, shoulders and on her neck.

Dr. Lawrence H. Boram, a resident pathologist at Louisville General Hospital, performed the autopsy on the body. The substance of his testimony is that in his opinion the deceased died as the result of multiple blows by some relatively blunt object, and that the wounds found on her body could not have been caused by a fall.

Dr. Allen Lansing also testified that in his opinion the injury was caused by multiple blows to the head by a very hard object and that the injury could not have resulted from a fall. The appellant offered evidence by expert pathologists that contradicted the testimony of Dr. Boram and Dr. Lansing.

■ Appellant first contends that there was insufficient evidence of corpus delicti to submit the case to the jury. We disagree. The testimony of Dr. Lansing and Boram coupled with the photographs in the case, in our opinion, were sufficient beyond any doubt to convince the unbiased observer that the deceased met her death as the result of violence from some other source than a fall. Since appellant admitted that no person other than himself could have inflicted the injuries, we believe this was sufficient to establish corpus delicti.

■ Appellant's second contention is that the trial court committed prejudicial error in allowing the colored photographs and blood-stained clothing to be introduced into evidence. We have examined the evidence carefully and believe they were properly admitted. We stated in Salisbury v. Commonwealth, Ky., 417 S.W.2d 244 (1967), that where the facts revealed by photographic evidence are competent and necessary, the evidence cannot be excluded because it is heinous or repulsive. We there pointed out that were the rule otherwise, the state might be precluded from proving the commission of a crime that by its nature was heinous or repulsive. We believe the photographs in this instance were without question the best evidence of the scene of the interior of the bathroom where the body was found and that it was most relevant to prove the conditions surrounding the body at the scene. As stated in Napier v. Commonwealth, Ky., 426 S.W.2d 121 (1968), the time has come when it should be presumed that a person capable of serving as a juror in a murder case can, without losing his head, bear the sight of photographs showing the body of the decedent in the condition in which it is found. Objection is made by appellant in this case that enlarged photographs of the interior of the bathroom were exhibited to the jury. While it is true that a view of these photographs has some effect to shock, it is nevertheless true that they did serve to give the jury better perspective and understanding of the scene in the bathroom as it existed.

We believe their evidentiary value in this respect exceeded any tendency they might have had to in any way inflame the passions of the jury. We believe the photographs were all competent.

 Appellant next contends that the trial court committed prejudicial error when it instructed the jury on voluntary and involuntary manslaughter. As to this contention we will first point out that there could be no prejudicial effect from the instruction on involuntary manslaughter as appellant was not found guilty under this instruction. While there is doubt that appellant's objection in his motion and grounds for a new trial is sufficiently specific to properly raise the question of whether or not the instruction on voluntary manslaughter should have been given, we will, nevertheless, pass upon this point as we are of the opinion the instruction was not prejudicial. The fact that the parties had been drinking and had been discussing the possibilities of a divorce coupled with the physical surroundings existing at the time the body was found, and the markings upon the body, in our opinion are sufficient to warrant the jury in believing that the homicide was accomplished as the result of heat of passion. Therefore, the instruction on voluntary manslaughter was justified ' by the evidence. We think the case falls within the rule that if a reasonable inference can be drawn from the evidence that the defendant in a homicide case is guilty of a lesser crime than murder then proper instructions should be given on such lesser crime. Pennington v. Commonwealth, Ky., 344 S.W.2d 407 (1961); Harris v. Commonwealth, Ky., 389 S.W.2d 907 (1965).

Appellant's next contention is that the court erred in permitting the Commonwealth to introduce Dr. Lawrence Boram as a rebuttal witness. We have examined the record and find that no proper objection was made to the admission of his testimony.

It is finally contended by the appellant that the trial court erred in not sustaining his motion to suppress evidence obtained from the home by reason of a defective search warrant and in permitting inflammatory arguments by the Commonwealth's Attorney at the close of the case. We find no merit in either of these contentions. It is our opinion the search warrant was valid and the closing arguments by the Commonwealth were within the bounds previously permitted by this court.

The judgment is affirmed.

All concur.