**Charles Ray CAINE and Edward McIntosh, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 16, 1973.

R. Barry Wehrman, Wehrman & Wehrman, Covington, for appellant Charles Ray Caine.

Burton R. Singer, Newport, Arthur Clark, Cincinnati, Ohio, for Edward McIntosh.

Ed W. Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, Ottis P. Lanter, Commonwealth Atty., Williamstown, Wm. P. McEvoy, Boone County Atty., Burlington, for appellee.

STEINFELD, Justice.

After indictments appellants Charles Ray Caine and Edward McIntosh were found guilty on a trial before a jury of the murder of Carl Walp, who was shot on September 14, 1971, near Walton in Boone County, Kentucky. Their sentences were death by electrocution. Inasmuch as these cases involve capital punishment, we have searched the record for errors so that they, as well as the contentions of the appellants, could be considered. Drake v. Commonwealth, 263 Ky. 107, 91 S.W.2d 1009 (1936). Finding none which prejudiced the rights of appellants, we affirm.

On September 13, 1971, at about 11:30 p. m., Caine, McIntosh, Roger Allen Wood, and Janice K. Smith met in Covington, and at Wood's suggestion agreed to commit a robbery in downtown Cincinnati, Ohio. They drove to Newport, where McIntosh obtained a pistol which he gave to Caine. When they arrived at the scene of the proposed robbery they found too many people around; therefore, they abandoned this caper, returned to Kentucky, and proceeded southwardly on Highway I-75. Upon nearing Walton, they left the highway and approached an Enco Service Station. The appellants directed Miss Smith, who was driving, to proceed a short distance down the road past the service station and then to stop the car. Caine and McIntosh got out of the automobile after telling Miss Smith to drive a short distance away, to wait a few minutes and then return. The appellants approached the service station from the rear, walked around the side, and entered it from the front. Shortly thereaf-

ter Wood and Miss Smith heard three gun shots. She drove toward the station as the appellants ran out of the building toward the car. Caine, who had the pistol in his hand, and McIntosh got into the automobile and the group drove off with McIntosh at the wheel.

McIntosh told Wood and Miss Smith that the robbery attempt had been foiled by the service station attendant, who they said pulled out a gun and began firing at them. On their way back to Covington, Caine examined a wallet, threw the contents out of the car window and placed the wallet in his pocket. With Miss Smith helping, he also tried to expel the spent cartridges from the pistol, but was unsuccessful. Wood was let out of the car when they arrived at Covington, and the other three returned to Caine's apartment where he left the stolen wallet on a night stand in the bedroom. They divided the money they had obtained and then they separated.

At approximately 3:30 a. m. that same morning, Boone County Patrolman Wilson arrived at the service station and found Walp, still alive, lying face down on the floor. The patrolman called the Walton Life Squad. Sgt. Tate of the Kentucky State Police appeared at approximately 4 a. m. and found the Life Squad and several other police officers present. Tate observed Walp lying on a cot, bleeding profusely from a head wound. Shortly thereafter, Boone County Deputy Coroner Shields, who is also a licensed and experienced mortician, arrived. He testified that Walp was dead, that he was lying on a cot with a hole in the back of his head, and that something had entered the back of the skull 6 to 8 inches which he believed was a bullet. Although he probed, he was unable to remove the object. He expressed the opinion that the type of wound he observed could have caused Walp's death.

On the afternoon of the day following the robbery, Roger Wood read in a local newspaper of Walp's murder. He surrendered to the authorities and told them what had occurred on the morning of September 14th. On September 16, at approximately 10 a. m., Sgt. Tate secured warrants for the arrest of Roger Allen Wood, Janice K. Smith, "Edward Doe" and "Charles Doe" for the offense of murder. Several police officers went to Caine's residence in Covington. A knock on the door brought no response, but the door swung open and the officers entered. No one was at home, whereupon all officers departed, except Detectives Seiter and Mercer, both members of the Covington Police Department. In a short time, Caine and his wife entered, whereupon Caine was arrested and searched in the hallway by Detective Seiter. He was then taken into a bedroom which overlooked the street, so that the officers could observe from a window whether someone had accompanied him. The detectives saw a man seated in a car, so Mercer went to it and arrested McIntosh. While in the bedroom, the officers saw and seized a wallet which was lying on a table near the bed. Later it was identified as the property of Walp.

After handcuffing Caine and McIntosh together, the officers advised them of their rights and promptly took them to the city building in Covington, where they again were advised of their rights. They were moved to and processed at the Boone County Police Headquarters at Burlington, where McIntosh said, "It was a needless killing; Charlie did it, I didn't."

■ A motion " * * * to suppress the seizure of a wallet from his home by Covington Police Officers" was made by Caine. He contended " * * * that his arrest by the police was accomplished by means of an improper and illegal arrest warrant, and further, by means of an illegal entry into his home." Reliance is placed upon the Fourth Amendment of the Federal Constitution, Section 10 of the Kentucky Constitution and RCr 2.06. KRS 431.005 authorizes a peace officer to make an arrest " * * * when he has reasonable grounds to believe that the person being arrested has committed a felony." Scamahorne v. Commonwealth, Ky., 376

S.W.2d 686 (1964). Peace officers Seiter and Mercer were acting on facts which they had obtained in assisting in the investigation of the death of Walp. They were proceeding in reliance on reliable information furnished to them, which information carried enough indicia of reliability to justify their action in visiting Caine's residence, waiting there for him, and looking out the window to see if McIntosh was present. The officers had reasonable grounds to believe that Caine had committed a felony, therefore they had authority to arrest without a warrant, and the claimed invalidity of the warrant is not fatal. Although their entry into the bedroom to observe the street from a window may have been a limited intrusion, it was reasonable. Cf. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

The wallet which was positioned on a table in plain view was not obtained as a result of prior knowledge of its location. There was no time to secure a search warrant. This was not a prohibited search. Royce v. Commonwealth, 194 Ky. 480, 239 S.W. 795 (1922); Wilson v. Commonwealth, Ky., 403 S.W.2d 705 (1966); Hahn v. Commonwealth, Ky., 453 S.W.2d 736 (1970). In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), it was written:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."

Complaint is made that the trial court erred in denying a change of venue. Newspaper articles reporting the homicide and discussing it appeared on the three days following the event. On September 17, the press reported that a girl and three men had been arrested and charged with the crime. A photograph of Miss Smith, Caine, McIntosh, and Wood accompanied the story. The next day their arraignment was told, but by that time it was no longer "front page news." Inside stories appeared on September 24, 29, and October 8. Several photographs and reports similarly appeared in another newspaper, also of general circulation.

The first motion for a change of venue was made and overruled on November 12, 1971. It was renewed and again overruled on December 14; after several prospective jurors had been interrogated on the voir dire, as it appeared that all members of the panel probably had read about the homicide. Several prospective jurors indicated that they could not give the defendants a fair trial, so they were excused. It is argued that this relief was insufficient to assure a fair trial. Cited is Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

The Commonwealth points out that KRS 452.220(2) requires that a motion for a change of venue be in writing and supported " * * * by the filing of the affidavits of at least two credible persons, not kin to or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true." We find neither a written motion nor affidavits in the record, and counsel refers us to none. In Yager v. Commonwealth, Ky., 436 S.W.2d 527 (1969), we said the failure to file the affidavits was fatal, and Bryant v. Common-

wealth, Ky., 467 S.W.2d 351 (1971), held that compliance with KRS 452.220(2) was mandatory. Also see Murray v. Commonwealth, Ky., 473 S.W.2d 150 (1971).

■ Furthermore, the trial court is vested with the discretion of determining whether to grant a change of venue, Hurley v. Commonwealth, Ky., 451 S.W.2d 838 (1970), and there having been no showing or finding by us of abuse of that discretion, we will not declare error. Ohio River Sand Co. v. Commonwealth, Ky., 467 S. W.2d 347 (1971).

■ It is next argued that the failure to conduct a preliminary hearing denied appellants due process of law, " * * * as guaranteed under the 5th and 14th Amendments." They had appeared for such a hearing, but on motion of the Commonwealth, there was a continuance. During that interval, the grand jury returned an indictment charging conspiracy to rob, robbery, and murder. The vigorous argument on this issue includes reliance on RCr 3.04, and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). Appellants say that a defense cannot be effectively prepared without an opportunity to find out what the Commonwealth expects to prove.

The same or similar arguments have been rejected many times. See Commonwealth v. Watkins, Ky., 398 S.W.2d 698 (1966), cert. den. 384 U.S. 965, 86 S.Ct. 1596, 16 L.Ed.2d 677 (1966); Messer v. Commonwealth, Ky., 454 S.W.2d 694 (1970); Watson v. Commonwealth, Ky., 444 S.W.2d 553 (1969); Lunsford v. Howard, 316 F.Supp. 1125 (D.C.1970). In Jenkins v. Commonwealth, Ky., 477 S.W.2d 795 (1972), we wrote " * * * * when an indictment results from direct submission of evidence to a grand jury, there is no cause for or right to an examining trial and the failure to conduct an examining trial is not error." We are not persuaded that this rule should be changed.

Appellants contend that the Commonwealth failed to establish " * * * the cause of death by a criminal agency—the Corpus Delicti." They say, "that the conclusions of Harvey v. Commonwealth, Ky., 318 S.W.2d 868 (1958), are not controlling * * * *" and they argue that the elements of crime and death as its result, which were noted in Hollin v. Commonwealth, Ky., 307 S.W.2d 910 (1957), were not produced.

■ The corpus delicti may be established by circumstantial evidence. Peace v. Commonwealth, Ky., 489 S.W.2d 519 (1972); Dolan v. Commonwealth, Ky., 468 S.W.2d 277 (1971); Lacey v. Commonwealth, 251 Ky. 419, 65 S.W.2d 61 (1933). "While it is customary in cases of this character to introduce medical witnesses to establish the cause of death, proof thereof is not confined to that character of testimony and like other essential facts it can be proved by circumstantial evidence." Commonwealth v. Sullivan, 285 Ky. 477, 148 S.W.2d 343 (1941); Witt v. Commonwealth, 305 Ky. 31, 202 S. W.2d 612 (1947). Keeping those principles in mind, we note that there was a plan to commit a robbery, a pistol in the possession of appellants, their presence near the automobile service station, their conduct before and after the noises which sounded like shots, the admission by McIntosh to Sgt. Tate that he was present at the "needless killing," and the recovery of Walp's wallet.

■ Mr. Shields, who had been a licensed funeral director and embalmer for nineteen years and a deputy coroner five or six years, testified that he had examined twenty to thirty people who had been shot. He stated that he found a man whom he afterwards learned was Carl Walp, lying on a cot with a hole in the back of his head, and that in his " * * * opinion it was a bullet wound." Shields probed the wound and then ordered the body removed for an autopsy, which was performed. Although we fail to understand why the results of that study, or at least a death certificate, were not introduced in evidence, we hold that the corpus delicti was established. Peace v. Common-

wealth, supra, and Moore v. Commonwealth, Ky., 489 S.W.2d 516 (1972).

A timely objection was made to the testimony of Deputy Coroner Shields that in his opinion the wound in Walp's head was caused by a bullet. We said in Pulliam v. Commonwealth, 296 Ky. 696, 178 S.W.2d 417 (1944), "The last complaint is that the evidence of Louis LeCompte, the undertaker, was incompetent because he was not a licensed physician. We are cited to no authority holding that a licensed undertaker, embalmer and funeral director, such as Mr. LeCompte, is incompetent to testify concerning the nature of wounds or other conditions of the human body. To engage in such profession requires a study and practical knowledge of the anatomy and structure of the human body. KRS 316.030, subsections 2 and 3. However, even a lay witness is competent to testify as to wounds and external conditions of the human body." Also see White v. Commonwealth, Ky., 333 S.W.2d 521 (1960). The trial court correctly refused to exclude this testimony.

Appellants claim that there are other reasons why the trial court erred in overruling motions for directed verdicts of acquittal. They rely on RCr 9.62, which provides in part, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense * * *." The statement made by McIntosh to Sgt. Tate that it was a needless killing, that he was there but did not do it, corroborated the testimony of Wood and Miss Smith as to McIntosh. (It is contended that this statement was inadmissible, but later we will discuss that issue and rule that it was properly received.) The wallet connected Caine with the event. Corroboration was established. Barker v. Commonwealth, Ky., 385 S.W.2d 671 (1965); Goff v. Commonwealth, Ky., 245 S.W.2d 446 (1952); Cf. Goodhue v. Commonwealth, Ky., 415 S.W.2d 845 (1967). Compare Howard v. Commonwealth, Ky., 487 S.W.2d 689 (1972).

Caine and McIntosh argue that the warnings they received did not comply with the directions given in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), therefore they say that McIntosh's statement should have been excluded. Specifically, they point out that Sgt. Tate read "Rights to Waiver" as follows: " * * * We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." The answer is that the trial court apparently concluded from conflicting testimony that the statement which McIntosh made that it was a needless killing was his voluntary expression absent any interrogation and in spite of a caution by Sgt. Tate that his lawyer was not present. Tate testified that McIntosh had said previously that he wanted to make no statement unless his lawyer was present. The warnings did not result in the voluntary admission by McIntosh. Cf. Combs v. Commonwealth, Ky., 438 S.W.2d 82 (1969).

When counsel for the Commonwealth was about to ask Sgt. Tate what statement McIntosh made, Caine's lawyer objected on the ground that the warnings were legally inadequate. The objected-to line of questioning was then abandoned. Later when a deputy sheriff was asked about any statement made by McIntosh, the attorney representing Caine said "Objection—This is hearsay as far as Mr. Caine is concerned and ask (sic) that the jury be admonished to disregard it. I am objecting so that you can advise the jury that what Mr. McIntosh said on this occasion doesn't concern Mr. Caine." The court admonished the jury as follows:

"Ladies and Gentlemen, at the request of counsel for Mr. Caine, I admonish you that nothing related by the witness is to be construed pertaining to Mr. Caine."

Caine's attorney requested no mistrial, nevertheless he argues that under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the admission of

the statement attributed to the co-defendant McIntosh denied Caine a fair trial.

The trial court followed the request made by Caine's counsel. The Bruton opinion does not indicate what prompted the admonition therein given nor does it indicate whether a motion for a mistrial was made. Without such a motion, a trial judge rarely can so declare without creating a situation that may result in double jeopardy. United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1973).

We hold that a violation of the Bruton rule, if any occurred, was harmless beyond a reasonable doubt in view of the overwhelming evidence of Caine's guilt, as manifested by the testimony of Miss Smith and Roger Wood, corroborated by Walp's wallet which was found at Caine's bedside. Cf. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S. Ct. 1726, 23 L.Ed.2d 284 (1969).

■ There is a complaint that a letter written by Miss Smith to McIntosh during her jail confinement was erroneously rejected because of a Commonwealth objection. The letter was never tendered, therefore, it is not a part of the record. We are unable to tell whether a prejudicial error, or any error, was committed. Cf. Brown v. Smiley, Ky., 428 S.W.2d 217 (1968).

■ Appellants contend that testimony of Detective Robert Robertson regarding the service of Wood as a police informer should have been excluded on objection. The officer was permitted to tell that Wood had attempted to help apprehend persons engaging in the sale of narcotics. It is argued " * * * that the officer's testimony should have been limited to the trust-worthiness of Wood's testimony." On cross-examination, the officer admitted that he knew nothing about Wood's background and that about all he knew was that he had been in jail. We fail to see how appellants were prejudiced even if the

examination may have exceeded its proper scope.

■ Pursuant to RCr 9.48, the trial court granted appellants' motion to separate the witnesses, whereupon Miss Smith was sent to an anteroom off to the side of the court room. Defense counsel noticed that the door to the anteroom was slightly ajar, therefore he brought this to the attention of the court. The trial judge ordered the door closed and ruled " * * * that if anything was overheard by the witness, if it was, it would not be prejudicial in the defendant's having a fair trial and the motion is overruled." Defense counsel admit that cases on this subject hold that a discretion is allowed the trial judge in determining whether the witness who overheard testimony given by others may testify. Jaggers v. Commonwealth, Ky., 439 S.W.2d 580 (1969). However, they contend that " * * * the defendants should not be compelled to show prejudice, but the burden should be for the Commonwealth to show a lack of prejudice * * *." The incident occurred while Wood was testifying, so says Caine's brief, but we are not referred to nor can we find any place in the transcript of evidence or in the record, any report of what occurred on which we can determine if the discretion was erroneously applied. A day later, as the trial progressed, and at a time when Miss Smith was called as a witness, the objection to her testimony was made and then counsel stated, " * * * it is extremely possible and probable that the witness, Janice Smith, heard the testimony introduced in court yesterday * * *." Whether there should be a showing of lack of prejudice by the Commonwealth we need not decide, for in order for this court to find an abuse of discretion, a record of what occurred is essential.

■ Appellants claim that the court erred in instructing the jury, saying that the death penalty should not have been authorized. At the time of the trial, our case law, as well as the statute, directed this

type of instruction, however, since that time, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 347 (1972), was decided. We construe that decision as leaving us no alternative but to reduce the punishment to the only lower penalty authorized by KRS 435.010, which is life imprisonment.

The appellants argue that the trial court committed prejudicial error in instructing the jury to determine whether Miss Smith or Wood were accomplices. They cite Richmond v. Commonwealth, Ky., 370 S.W.2d 399 (1963), in which we held that where there is no reasonable doubt of an accomplice relationship existing the court should decide the issue. We stated in Head v. Commonwealth, Ky., 310 S.W.2d 285 (1958), that where the evidence creates a doubt whether a person is an accomplice, it is a question for the jury. It seems to us that the evidence clearly showed that both Miss Smith and Wood were accomplices and that no such instruction was authorized. Schweinefuss v. Commonwealth, Ky., 395 S.W.2d 370 (1965). However, no prejudice resulted from allowing the jury to consider this issue because it is clear as a matter of law that the testimony of the accomplice was corroborated. Mouser v. Commonwealth, Ky., 491 S.W.2d 821, (decided February 16, 1973).

It is contended that the trial court erroneously failed to advise the jury " * * * on the legal and statutory elements of the crime of robbery." Appellants were being tried for murder while committing another felony. The instruction correctly followed the pattern found in 3 Stanley, Instructions to Juries, Sec. 870 which we have approved in several cases. See notes to that section.

Caine says that the evidence showed his heavy drinking, and that this required an instruction upon lesser offenses, specifically manslaughter. He cites Richardson v. Commonwealth, 284 Ky. 319, 144 S.W.2d 492 (1940), and Chism v. Commonwealth, 286 Ky. 314, 150 S.W.2d 694 (1941). The evidence showed that Caine had a few drinks, but the only two witnesses who testified on this subject stated that Caine was not intoxicated, therefore he was not entitled to an instruction unsupported by evidence. Davis v. Commonwealth, 193 Ky. 597, 237 S.W. 24 (1922).

The judgments should be amended to reduce the sentences from death to life imprisonment. As so amended, they are affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.